IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ISRAEL K. NEGASH, ET AL. | * |
| v. | * Civil No. RDB-17-1954 |
| UNITED STATES OF AMERICA, | * |

## MEMORANDUM

Plaintiffs Israel K. Negash and Ethio, Inc., d/b/a Sunoco Food Mart, bring this action against defendant United States of America under 7 U.S.C. § 2023, asking the court to set aside the Food & Nutrition Service's decision to permanently disqualify them from participating in the Supplemental Nutrition Assistance Program as a retailer. Now pending is defendant's motion to dismiss or, in the alternative, for summary judgment. The parties have fully briefed the issues, and no oral argument is necessary. *See* Local Rules 105.6. For the reasons set forth below, defendant's motion is treated as a motion for summary judgment and granted.

## BACKGROUND

Plaintiff Israel K. Negash ("Negash") is the owner and operator of Ethio, Inc., d/b/a Sunoco Food Mart ("the Store") in Baltimore, Maryland. (ECF No. 1, ¶ 1). The Store began participating in the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as Food Stamps, in May 2001. (ECF No. 9-2; Administrative Appeal Record ("A.R.") 1).

1

## The SNAP Program

SNAP is a government program operated by the Food & Nutrition Service ("FNS"), a component of the United States Department of Agriculture ("USDA"). *See* 7 C.F.R. § 271.3. SNAP is operated pursuant to 7 U.S.C. §§ 2011-2036. The purpose of SNAP is to provide food to low income individuals. *See* 7 U.S.C. § 2011. SNAP beneficiaries are awarded benefits in the form of an Electronic Benefits Transfer ("EBT") card, which is akin to a debit card and can be used only for the purchase of food and certain other eligible items sold by approved SNAP retailers. *See id.* §§ 2013(a), 2016(j); *see also* 7 C.F.R. 271.2.

SNAP retailers are governed by certain regulations. *See* 7 C.F.R. § 278.6. Pursuant to those regulations, the FNS can permanently disqualify a SNAP retailer that it finds is "trafficking" in SNAP benefits. *Id.* "Trafficking" is defined in pertinent part as "buying, selling, stealing or otherwise effecting an exchange of SNAP benefits issued and accessed via (EBT) cards . . . for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2. A finding of trafficking must be based on evidence, which "may include facts established through on-site investigations, inconsistent redemption data, [and] evidence obtained through a transaction report under an electronic benefit transfer system . . . ." 7 C.F.R. § 278.6(a). If a retailer is found to be trafficking in SNAP benefits, the retailer is permanently disqualified from participation in SNAP. *Id.* FNS may impose a civil money penalty ("CMP") in lieu of permanent disqualification only where the retailer requests consideration of this alternative penalty within ten days, 7 U.S.C. § 278.6(b)(2)(iii), and where the retailer can meet certain other criteria designed to demonstrate that a rogue employee engaged in trafficking despite the best efforts of the retailer. *See* 7 U.S.C. § 278.6(i).

The regulations provide for a system of administrative and judicial review of an FNS decision to disqualify a SNAP retailer. *See* 7 U.S.C. § 2023(a); 7 C.F.R. §§ 279. First, the FNS must send the retailer written notice of its initial decision. 7 U.S.C. § 2023(a)(1). Upon receipt of the written notice, the retailer may ask the FNS to review the initial decision. 7 C.F.R. § 279.1. If requested, the FNS must review the initial decision and render a final agency decision. *Id.* at 279.5. After receiving notice of a Final Agency Decision, a retailer may seek judicial review in a state or federal court. *See* 7 U.S.C. § 2023(a)(13); 7 C.F.R. § 279.7.

### The Facts Of This Case

In this case, the FNS's electronic alert system indicated that the Store's EBT data was consistent with possible trafficking in EBT benefits between February and July 2016. (A.R. 72). As a result, the FNS Retailer Operations Division ("ROD") began an investigation into the Store. *Id.* An individual from the ROD visited the Store on June 18, 2016. (A.R. 30-35). The ROD also compared the Store's transactions to those of other stores in the area, including four other convenience stores within a one-mile radius. (A.R. 79-82). The ROD then analyzed all of the information gathered during its investigation and determined that the transactions discovered by the EBT data were, in fact, suspicious. (A.R. 85-87). The Store's suspicious transactions fell into three categories: (1) rapid and repetitive transactions in a short period of time from the same household (A.R. 88-91); (2) transactions involving the depletion of the majority or all of a household's benefits in a short timeframe (A.R. 92-94); (3) high dollar transactions (A.R. 95-100). These transactions were inconsistent with the transactions at other similarly situated SNAP retailers. (A.R. 79-84).

On August 11, 2016, the FNS sent a letter to Negash informing him that the Store was being charged with trafficking under 7 C.F.R. § 271.2. (A.R. 85-87). The letter stated that

3

Negash had a right to explain the suspicious charges and a right—within ten days—to request a CMP ("Civil Money Penalty") in lieu of permanent disqualification. (A.R. 86-87).

Negash, through his attorney, replied to the charge letter, requesting additional time to respond. (A.R. 103). He acknowledged that in so doing he was forfeiting the right to be considered for a CMP. *Id.* Eventually, Negash responded to the substantive allegations, offering a litany of explanations for the suspicious transactions. (A.R. 107-115). The explanations offered by Negash primarily revolved around the notion that the Store was not a typical convenience store/gas station, but was instead the primary grocer for many individuals. *See id.* The FNS considered Negash's explanations but found no evidence the Store was anything but a typical convenience store, and found that Negash's other explanations did not account for the suspicious transactions. (A.R. 188-197). On September 20, 2017, the FNS issued a determination letter informing Negash that it found the Store had engaged in trafficking and that it was therefore permanently disqualifying the Store from participation in SNAP. (A.R. 198-99).

Negash sought administrative review of the decision to disqualify the Store, reiterating many of the same explanations offered in response to the initial charge letter. (A.R. 212-226). An Administrative Review Officer ("ARO") of the FNS reviewed the information submitted by Negash and then issued a Final Agency Decision on June 13, 2017. (A.R. 313-329). The ARO found, among other things, that the Store was simply a typical convenience store/gas station, and that its inventory did not lend itself to the many large, suspicious transactions at issue. (A.R. 323). It also noted that following the Store's receipt of the initial charge letter there was a precipitous decline in the number of suspicious transactions—a fact that was in itself suspicious. (A.R. 328). Therefore, the ARO upheld both the decision that "trafficking" had occurred and the

decision to permanently disqualify the Store from the SNAP program. (A.R. 329). Negash and the Store now seek judicial review of those decisions.

## STANDARDS

### Motion To Dismiss Or, In The Alternative, For Summary Judgment

Defendant has filed a dispositive motion styled as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. It has attached exhibits to its submissions. (*See* ECF No. 9). A court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does so, "the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). Therefore, a motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436–37 (D. Md. 2011). A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Sager v. Hous. Com'n of Anne Arundel Cty.*, 855 F.Supp.2d 524, 542 (D. Md. 2012) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.)). The court chooses to consider defendant's submissions and therefore treats its motion as a motion for summary judgment.

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the

suit. *Anderson*, 477 U.S. at 248. In assessing a motion for summary judgment, the court must view the facts, and all inferences justifiably drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The court must decide whether there is a genuine issue for trial, "not . . . weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

### Judicial Review of an FNS Decision to Disqualify a SNAP Retailer

Judicial review of an FNS decision to disqualify a retailer from SNAP is to be conducted *de novo*. 7 U.S.C. § 2023(a)(15). The retailer has the burden of establishing by a preponderance of the evidence that the agency determination should be set aside. *AJS Petroleum, Inc. v. United States*, 2012 WL 683538, at *4 (D. Md. Mar. 1, 2012); *2341 E. Fayette St., Inc. v. United States*, 2005 WL 2373696, at *1 (D. Md. Sept. 26, 2005). In reviewing the agency's decision according to this standard, the court is not bound by the administrative record. *See, e.g., Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997); *Ibrahim v. United States*, 834 F.2d 52, 53-54 (2d Cir. 1987); *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975). If the court determines that no genuine issue of material fact is presented, it can resolve the issue by way of a motion for summary judgment. *See, e.g., Idias v. United States* 359 F.3d 695 (4th Cir. 2004); *Bon Supermarket & Deli v. United States*, 87 F. Supp. 2d 593, 599-600 (E.D. Va. 2000).

If the court concludes that a violation has occurred, it must then review the penalty issued by the FNS. *See Cross v. United States*, 512 F.2d 1212, 1215 (4th Cir. 1975) ("the scope of judicial review extends to the period of administrative sanction"). This review is to be conducted according to an "arbitrary and capricious" standard. *See, e.g., Mahmood v. United States*, 2012 WL 3038638, at *2 (D. Md. July 24, 2012); *2341 E. Fayette St., Inc.*, 2005 WL 237696, at *1.

Thus, if the court finds that violations in fact occurred, the penalty issued by the FNS will be upheld unless the decision to impose that penalty was arbitrary or capricious.

## ANALYSIS

### I. The Finding That Trafficking Occurred

The FNS's determination that the Store engaged in trafficking is supported by the administrative record and Negash has failed to offer any credible argument to the contrary. The decision to hold a SNAP retailer liable for trafficking can be made even where the retailer is not caught red-handed exchanging SNAP benefits for cash or consideration other than eligible food. *See, e.g., AJS Petroleum, Inc. v. United States*, 2012 WL 683538, at *5 (D. Md. Mar. 1, 2012). Indeed, the decision can be made based on "facts established through on-site investigations, inconsistent redemption data, and evidence established through a transaction report under an electronic benefits transfer system." *See* 7 U.S.C. § 2021(a)(2); *see also* 7 C.F.R. § 278.6(a).

In this case "a transaction report under an electronic benefits transfer system" indicated that the Store had engaged in suspicious transactions of three kinds: (1) rapid and repetitive transactions in a short period of time from the same household (A.R. 88-91); (2) transactions involving the depletion of the majority or all of a household's benefits in a short timeframe (A.R. 92-94); and (3) high dollar transactions (A.R. 95-100). Based on this electronic alert, the FNS conducted an investigation into the Store. This investigation included an "on-site investigation" which revealed that the store was a typical convenience store rather than a primary grocer. (*See* A.R. 298-99). It also included a comparison of the Store's transactions to those of similarly situated stores—including four other convenience stores within a one-mile radius—which revealed "inconsistent redemption data." (*See* A.R. 81-82).

In light of these undisputed facts, Negash clearly overstates the role the electronic alert system played in the FNS's ultimate decision. (*See* ECF No. 17-1, pp. 8-9). The electronic alert system triggered the investigation, but an "on-site investigation" and "inconsistent redemption data" were considered before the FNS determined that "trafficking" occurred. Therefore, the court finds Negash's attacks on the FNS's use of its electronic alert system wholly unpersuasive.

Likewise, the court finds Negash's explanations for the suspicious transactions—largely the same explanations offered at the administrative review stage—unpersuasive. The court will not address each of these explanations *seriatim*. Instead, the court points out that Negash has not attempted to explain the clearest evidence that trafficking occurred, namely, that the number of suspicious transactions diminished sharply and precipitously once he learned the FNS suspected him of trafficking. The FNS sent Negash an initial charge letter on August 11, 2016. (A.R. 85-87). Upon receipt of that letter, the number of balance-depleting transactions diminished from nearly five per month from February through July 2016 to zero in August 2016 and zero in September 2016. (A.R. 328). The number of excessively-large transactions diminished from nearly fifty per month from February through July 2016 to twenty-three in August 2016 and eight in September 2016. *Id.* Finally, the number of rapid and repetitive transactions diminished from nearly ten per month from February through July 2016 to six in August 2016 and zero in September 2016. *Id.* Absent any explanation to the contrary, the court draws the only logical conclusion possible based on this evidence: from February to August 11, 2016, Negash and the Store were trafficking in EBT benefits.

## II. The Decision to Impose a Penalty of Permanent Disqualification

In light of its finding that the Store engaged in "trafficking," the FNS's decision to permanently disqualify the Store from SNAP was not "arbitrary and capricious." Permanent

disqualification is almost always the appropriate sanction where a retailer is caught trafficking in food stamps. *See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i). In fact, the FNS has discretion to impose a CMP instead of a penalty of permanent disqualification only where a retailer demonstrates that a rogue employee engaged in trafficking despite the store's implementation of an effective compliance policy and program. *See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i). Negash has not made such a showing.

Moreover, according to 7 C.F.R. § 278.6(b)(2)(iii), "if a firm fails to request consideration for a civil money penalty in lieu of a permanent disqualification for trafficking and submit documentation and evidence of its eligibility within the 10 days specified . . . the firm shall not be eligible for such a penalty." Negash requested an extension to file a response to the initial charging letter after the end of the specified ten-day period. (A.R. 103). He acknowledged that, "in doing so we will forfeit our right to request the issuance of a civil money penalty in lieu of other sanctions." *Id.* Thus, Negash explicitly waived his right to request a CMP, a penalty the FNS would not have had discretion to impose in any event. Accordingly, the FNS's decision to permanently disqualify the Store from SNAP was not "arbitrary and capricious."

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. A separate order follows.

*February 5, 2019*
Date

*Richard D. Bennett*
Richard D. Bennett
United States District Judge

9