UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **ISRAEL K. NEGASH, et al.**, | ) |
| | ) |
| Plaintiffs, | ) NO. 1:17-cv-01954 |
| | ) |
| v. | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFFS' AMENDED MOTION FOR RECONSIDERATION AND BRIEF IN SUPPORT

Pursuant to the Federal Rules of Civil Procedures, the Plaintiffs, Ethio, Inc. d/b/a Sunoco Food Mart, and Israel K. Negash, an Individual, by and through their undersigned counsel, and hereby respectfully file this Amended Motion for Reconsideration of this Court's order entered February 5, 2018 (ECF No. 21), granting Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment. In support of this Motion for Reconsideration, the Plaintiffs state as follows:

## I. INTRODUCTION

This Court's February 5, 2018 Order improperly granted Defendant, United States of America's, motion for summary judgment (ECF No. 10), because this is a *de novo* action for Judicial Review of the United States Department of Agriculture's permanent disqualification of the Plaintiffs from participation in the Supplemental Nutrition Assistance Program (SNAP) as a retailer under 7 C.F.R.

§278.6, §279.7, and 7 U.S.C. §2023(13). In pertinent part, 7 U.S.C. 2023(15) and (16) state that the District Court is to determine by "trial *de novo*" the **validity** of the administrative disqualification issued by the Food and Nutrition Service, and should such determination be invalid, enter judgment in accordance with the law and the evidence. It is important to note that the statute does not specifically require that the Plaintiffs prove the transactions in question to be valid, but instead that the determination is invalid. Such invalidity can occur as the result of the transactions being reasonably explained (*see Skyson USA, LLC vs. United States*, 2010 WL 651032 (D. Hawaii 2010)) or through an error in the government's process or analysis of the data (*see Altawel vs. United States*, W.D.N.Y. 2014 WL 7272967[1]. Please review the footnote below.).

The Court is not bound to the Administrative Record in this case, nor is the administrative record immune from the rules of evidence. *See Ibrahim vs. United States*, 834 F.2d 52, 53-54 (2d. Cir. 1987). In perhaps one of the more well outlined SNAP review cases, the Sixth Circuit in its decision *H.T. Saunders vs.*

---

[1] This order on the government's motion for summary judgment was subsequently vacated *after* Mr. Altwell and the government came to a settlement agreement involving Mr. Altwell's reinstatement into the SNAP program. In the order vacating (2015 WL 10013741), the court notes that the prior order is vacated and to be considered of no effect. However, this is the result of the government taking diabolical steps to eliminate case law that favors stores in SNAP violation reviews. A casual perusal of the more than forty years of case law on these matters turns over fewer than ten cases where the government's decision is overturned. Such a result is not because the Department of Agriculture has been so successful in their efforts, but rather because they have taken extraordinary measures to cover up positive case law, such as that in *Altawel*. This case is therefore submitted to this court as persuasive (secondary) support, and citing an analysis that is factually correct: the failure of the department to accurately compare a subject store to other stores results in a fatally flawed statistical analysis.

*United States*, 507 F.2d 33 (6th Cir. 1974) outlined what task rests before the District court in judicial reviews:

> "In providing for a trial de novo upon court review of disqualification determinations, Congress intended a broader scope of review than that permitted under the general provisions of the Administrative Procedure Act. 5 U.S.C §706; J.C.B. Super Markets, Inc. vs. United States, [57 F.R.D. 500, 502-503 (W.D.N.Y. 1972)]. This requires a reexaminations of the entire matter rather than a mere determination of whether the administrative findings are supported by substantial evidence. *Great Atlantic & Pacific Tea Co. vs. United States*, 342 F.Supp. 492, 493 (S.D.N.Y. 1972); contra, *Marbro Foods, Inc. vs. United States,* 293 F.Supp. 754, 755 (N.D. Ill 1968). The court should make its own findings of fact based on the preponderance of the evidence and not limit itself to matters considered in the administrative proceedings. *J.C.B. Super Markets, Inc.*, supra, 57 F.R.D. at 503. Even if the unsworn statements relied upon by the government were sufficient to support a determination at the administrative level, the provision for a trial de novo requires that the district court make its determination on evidence of a kind and quality sufficient to support findings of fact under Rule 52(a), Fed.R.Civ.P. **Since the procedures followed at the administrative level do not provide for discovery or testing the evidence of the Department of Agriculture by cross-examination, it is particularly important that an aggrieved person who seeks judicial review in a trial de novo not be deprived of these traditional tools unless it is clear that no issue of fact exists**. As the court pointed out in *Miller vs. United States*, 54 F.R.D. 471 (W.D. Pa. 1972), all doubts as to the presence of a genuine issue of material fact should be resolved against a party moving for summary judgment." *Id* at 36. Emphasis added.)

In this particular instance, discovery has not yet begun, let alone been conducted at all. The Plaintiffs had never seen the Administrative Record before the government filed it in this matter, and has not had even an iota of opportunity to subject the government's data analysis to cross examination. Furthermore, the

Plaintiffs have never had subpoena power to gather the households and other witnesses to provide supporting testimony and evidence on behalf of the store.

For the reasons set forth herein, the Defendant's Motion to Dismiss or, In the Alternative, for Summary Judgment must be denied because (1) the Plaintiffs have stated a cause of action under 7 U.S.C. §2023, and (2) material issues of fact remain for evidentiary presentation, including the weight of the Defendants' data and computer programs, as well as the weight of the Plaintiffs' evidence, in addition to the fact that discovery in this matter is far from completed. Accordingly, Plaintiffs respectfully request reconsideration of the Court's February 5, 2018 Order.

## II. ARGUMENT AND AUTHORITIES

A motion for reconsideration is appropriate in the following circumstances: (1) to address an intervening change in controlling law; (2) to consider new evidence not previously available; (3) to correct a clear or manifest error of law or fact; or (4) to prevent manifest injustice. *Fisherman's Harvest, Inc. v. Post, Buckley, Schuh & Jernigan, Inc., et al.*, No. G-05-0151, 2008 WL 4277001, at *2 (S.D. Tex. Sept. 10, 2018) (citations omitted).

In this case, the Court has indicated that "in light of these undisputed facts, Negash clearly overstates the role the electronic alert system played in FNS's ultimate decision." This statement is fundamentally flawed for two reasons: (1)

there is considerable testimony in other cases by the Defendant's Section Chiefs and Program Specialists that they rely primarily on ALERT system patterns as the primary and sole source of evidence in this type of disqualification; and (2) **there was no on-site investigation**. There was an on-site inventory that was conducted by a *third party* who made basic observations about the store, but observed no violative activity whatsoever. A.R. 30-69.

Furthermore, *it is not undisputed* that the Defendant selected "similarly situated stores." The stores selected were never identified to the Plaintiffs, never disclosed in the filing of the Administrative Record in this matter, and have never been subject to cross examination or discovery of any type. There is absolutely no agreement on the part of the Plaintiffs that the Defendants identified accurate stores, as they were never identified to begin with.

What this Court has effectively done is require the Plaintiffs to have a crystal ball. This was an *informal* administrative proceeding before the Retailer Operations Division where no discovery took place, no disclosures were made by the Defendant to the Plaintiff (aside from a list of transactions) and a decision was reached without disclosure of the basis for this decision; an informal administrative review was conducted where again, the Plaintiffs were not furnished with any discovery, no additional information, and were expected to provide a response to

unspoken questions. The Administrative Record was not produced until this matter, and even still it remains heavily redacted.

The Case Analysis Document, which is the core of the Defendant's case, (A.R. 70-84) contains all of the information upon which the Defendant made its decision, but lacks disclosure of who the comparison stores are, and who the households were that the Defendant selected for comparison. This information was new to the Plaintiff in this matter, and still has never been fully disclosed.

So without any information at all in the first two steps of this process, and minimal information (with the valuable information still redacted) at this stage, and no cross examination or opportunity to identify rebuttal evidence, the Court has decided that the Plaintiffs cannot prove that the transactions were not trafficking?

This is straight out of a Kafka novel. We have allegations levied against a store, which are not subject to discovery at any stage now, and never fully disclosed, with a judgment disposing the case *before an answer was even filed* that determines that the Plaintiffs have lost the matter simply by participating.

The practical effect is obvious: not only did the Plaintiffs never get a day in Court, they never even had the opportunity to fully review the allegations brought against them, let alone gather evidence to rebut the allegations. As stated throughout the Brief in Opposition, the households who conducted these transactions still have never been identified. Certainly their depositions involving

the items that they purchased would be probative and useful for the Plaintiffs and the Court. Also, the deposition of the agency Program Specialist (Ms. Hilty) who chose the comparison stores could explain what criteria was used to select the stores, and what information was considered or not considered. Ms. Hilty is also likely to testify that she has no knowledge as to what the household sizes are, which she will admit has a direct correlation on their shopping habits and patterns.[2]

Somewhere in this process, the Plaintiffs have a right to check for errors. All this Court has done is blindly adopt the Agency's findings without so much as lip service to the possibility that the Defendant used improper stores, or that the households who conducted the transactions could provide useful information as to their shopping habits and patterns – let alone permit the Plaintiffs to identify unsupported assumptions or inaccuracies in the *still undisclosed* portions of the A.R. that caused the disqualification. The Court's ruling also prohibits the Plaintiffs from ever having the power of subpoena to gather inventory records to support their position.

This is all said to not mention that certain divisions of the Defendant's Food and Nutrition Service branch find the existence of trafficking in 100% of their cases at the administrative level. *In this District*, the case Randallstown African Int'l Market, LLC, et al. vs. US, GLR-16-4050, produced deposition testimony of a

---

[2] The undersigned counsel has deposed her and Mr. Skaer in other matters, which were afforded discovery.

Section Chief (Gilda Torres) showing that the Defendant *always* finds trafficking in cases generated by the ALERT system. Notably, in that case the Plaintiffs were permitted discovery and have found other irregularities in the reports, and have been given the opportunity to question the accuracy of the ALERT system and conduct discovery into the ALERT system. If that Court, in this District, had ruled the way that this Court has, the plaintiffs in that matter would never have had an opportunity to discover the bias and problems with the Defendant's judgment.

As it stands, ***this case*** now stands for the proposition that the Plaintiffs must come to Court with the foreknowledge of exactly what the Defendant has done wrong, without ever being granted the opportunity to conduct discovery or see an unredacted copy of the Administrative Record. Undoubtedly, the Government will seize upon this Court's ruling to offer the proposition that no Plaintiff can succeed on the merits of his/her case without the ability to accurately identify the shortcomings of the Defendant's case.

**Other Facts Matters Merit Attention**

The Plaintiffs repeatedly disputed that the ALERT system's transaction patterns have any relevant relation to trafficking. The Court, however, seems to accept this correlation despite no evidence being presented to establish such a connection, including citing the drop of transaction types after receipt of the Charge Letter. (Page 8 of the Memorandum). To be clear, there is no regulation

nor law against these transaction types.  A reduction in transactions that occurs after receipt of the Charge Letter does not prove trafficking, nor does it indicate anything other than that the retailer was told by the Department that those transactions were "suspicious" and then stopped making those transactions.  Any reasonable, law abiding person when charged with a crime and told that certain innocuous actions correlate to the crime, would avoid the innocuous actions.  The fact that the Plaintiffs did so here is of nebulous evidentiary value.

The Court did not address any of the contentions offered by the Plaintiffs in their twenty-five (25) page response, nor did the Court address the repeated requests for discovery contained therein as well as in the 56(d) declaration.  These issues should have been addressed, particularly in light of the fact that the Plaintiffs contested the nexus between the transaction patterns and the existence of trafficking, and because the depositions set out in the request clearly would result in testimony supporting the Plaintiffs.

**Due Process**

The Plaintiffs have a right to Substantive Due Process under the Fifth Amendment of the Constitution, which in pertinent part states that no person should be deprived of life, liberty, or property without due process of law.  Where the Plaintiffs have been given lip service due process by being dragged through an

assembly line process just as Joseph K. in *The Trial* was subjected to, and no procedural safeguards truly exist, then there can be no due process.

As noted in *Matthews vs. Eldridge*, 424 U.S. 319, 335 (1976), three elements must be present to satisfy the due process requirement: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probably value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In this matter, the private interest is the Plaintiff's most significant personal asset, his company, which provides for his livelihood. The risk of erroneous deprivation of this interest is *tremendous* where the Plaintiffs are never afforded the opportunity to even conduct discovery to determine what errors may exist, and the facts upon which the decision is made are *never* disclosed, even through two layers of appeal. Finally, while the Government has a right to administer the SNAP program and prevent fraud, such interest must be balanced upon the livelihood and financial consequences to the Plaintiffs, which can be catastrophic in this case.

Accordingly, this process, under the circumstances that the Court has imposed, is devoid of Due Process.

### III. CONCLUSION AND REQUEST FOR RELIEF

To be clear (if not overly redundant), the Court reviewed the Defendant's motion, accepted the Government's findings, and made an evidentiary determination that trafficking existed without the Plaintiff ever being afforded even the first discovery request. Instead, the Court has created case law indicating that the Plaintiff needs to know what the Defendant has done wrong in their assessment before filing a Complaint – before being able to see an unredacted copy of the allegations and evidence brought against them.

Nowhere in the American legal system should this be permitted.

Where the Government brings charges against a person, the Constitution permits that person the right to due process of law, including the right to participation and cross examination of evidence and allegations brought against them. In this matter, discovery should be permitted to occur, and the Plaintiffs should be afforded an opportunity to prove that their explanations for the transactions, in addition to such others which may be discovered, exist.

We therefore request the Court to set aside it's Order Granting the Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 21), and permit the discovery process to proceed as it has in other cases in this District.

Dated:  February 22, 2018            Respectfully submitted,

*Andrew Z. Tapp*
Andrew Z. Tapp, Esquire
Pro Hac Vice
Florida Bar Number:  68002
Metropolitan Law Group, PPC
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
(813) 228-0658
Andrew@Metropolitan.legal
Lajeana@Metropolitan.legal

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of February 2018, I caused a copy of the foregoing to be electronically served upon all parties receiving CM/ECF notices in this case.

*Andrew Z. Tapp*
ANDREW Z. TAPP, ESQUIRE
**COUNSEL FOR PLAINTIFFS**