IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ISRAEL K. NEGASH, *et al.*,   *

    Plaintiffs,   *

    v.   *    Civil Action No. RDB-17-1954

UNITED STATES OF AMERICA,   *

    Defendant.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On February 20, 2018, Plaintiffs Ethio, Inc. and Israel K. Negash (collectively "Plaintiffs"), filed an Amended Motion for Reconsideration (ECF No. 23)[1] based upon this Court's previous Memorandum Opinion and Order granting the Defendant United States of America's ("Defendant") Motion for Summary Judgment. (ECF Nos. 20, 21.) On March 1, 2018, the Defendant filed its Response in Opposition to the Plaintiffs' Motion for Reconsideration, arguing that the Plaintiffs are not entitled to relief under Rule 59(e) of the Federal Rules of Civil Procedure. (ECF No. 24.) The pending Motion was fully briefed by both parties and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Plaintiffs' Motion for Reconsideration (ECF No. 23) is DENIED.[2]

### BACKGROUND

The background facts of this case are set forth in this Court's Memorandum Opinion on February 5, 2018. (ECF No. 20); *Negash v. United States*, Civ. No. RDB-17-1954, 2018 WL

---

[1] Plaintiffs' first Motion for Reconsideration is MOOT. (ECF No. 22.)
[2] On April 6, 2018, Plaintiffs also submitted an *Ex Parte* Motion for Extension of Time to File Appeal fourteen (14) days after this Court's entry of the order. (ECF No. 25.) This Motion is GRANTED.

1

722481 (D. Md. Feb. 5, 2019). To summarize, Plaintiff Negash ("Negash") is the owner and operator of Ethio, Inc., d/b/a Sunoco Food Mart ("the Store") in Baltimore, Maryland. *Id.* at *1. In May 2001, the Store began participating in the Supplemental Nutrition Assistance Program ("SNAP"). *Id.* Pursuant to regulations governing SNAP retailers, the Food and Nutrition Service ("FNS")[3] is authorized to permanently disqualify any SNAP retailer that it finds "trafficking"[4] SNAP benefits. *See* 7 C.F.R. § 278.6.

Between February and July 2016, the FNS electronic alert system indicated that the Store's Electronic Benefits Transfer ("EBT")[5] data was consistent with possible trafficking in EBT benefits. *Negash*, 2018 WL 722481, at *3. As a result, the FNS Retailer Operations Division ("ROD") began an investigation into the Store and subsequently sent an individual from ROD to visit the Store on June 18, 2016. *Id.* ROD also compared the Store's transactions to those of other stores in the area, including four other convenience stores within a one-mile radius. *Id.* After analyzing all of the information gathered during its investigation, ROD determined that the transactions discovered by the FNS electronic system were, in fact, suspicious, and inconsistent with the transactions of other similarly situated SNAP retailers. *Id.* The Store's suspicious transactions fell into three categories: (1) rapid and repetitive transactions in a short period of time from the same household; (2) transactions involving the depletion of the majority or all of a household's benefits in a short timeframe; and (3) high dollar transactions. *Id.*

---

[3] SNAP is a government program operated by the FNS, a component of the United States Department of Agriculture ("USDA"). *See* 7 C.F.R. § 271.3.
[4] "Trafficking" is defined in pertinent part as "buying, selling, stealing or otherwise effecting an exchange of SNAP benefits issued and accessed via (EBT) cards . . . for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2.
[5] SNAP beneficiaries are awarded benefits in the form of an Electronic Benefits Transfer ("EBT") card, which is akin to a debit card and can be used only for the purchase of food and certain other eligible items sold by approved SNAP retailers. *See id.* §§ 2013(a), 2016(j); *see also* 7 C.F.R. 271.2.

On August 11, 2016, the FNS sent a letter to Negash, informing him that the Store was being charged with trafficking EBT benefits under 7 C.F.R. § 271.2.[6] *Negash*, 2018 WL 722481, at *4. Eventually, Negash responded to the substantive allegations, offering a litany of explanations for the suspicious transactions.[7] *Id.* After inquiring into Negash's explanations, FNS found: (1) no evidence the Store was anything but a typical convenience store; (2) and Negash's other explanations did not account for the suspicious transactions. *Id.* On September 20, 2017, the FNS issued a determination letter informing Negash that it found the Store had engaged in trafficking SNAP benefits and was therefore permanently disqualified from participation in SNAP. *Id.*

Negash sought an administrative review of the decision to disqualify the Store, reiterating many of the same explanations offered in response to the initial charge letter. *Id.* An FNS Administrative Review Officer ("ARO") reviewed the information submitted by Negash and then issued a Final Agency Decision on June 13, 2017. *Id.* The ARO found, among other things, that the Store was simply a typical convenience store/gas station, and that its inventory did not lend itself to the many large, suspicious transactions at issue. *Id.* It also noted that following the Store's receipt of the initial charge letter there was a precipitous decline in the number of suspicious transactions—a fact that was in itself suspicious. *Id.* Therefore, the ARO upheld both the decision that "trafficking" had occurred and the decision to permanently disqualify the Store from the SNAP program. *Id.* On July 13, 2017,

---

[6] The letter stated that Negash had a right to explain the suspicious charges and a right-within ten days-to request a CMP ("Civil Money Penalty") in lieu of permanent disqualification. *Id.* at *3-4.
[7] The explanations offered by Negash primarily revolved around the notion that the Store was not a typical convenience store/gas station, but was instead the primary grocer for many individuals. *Id.* at *4.

3

Negash filed a Complaint with this Court requesting a judicial review of the FNS determination. (ECF No. 1.)

STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration." Instead, Rule 59(e) authorizes a district court to alter, amend, or vacate a prior judgment, and Rule 60 provides for relief from judgment. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.4 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011). As this Court explained in *Cross v. Fleet Reserve Ass'n Pension Plan*, Civ. No. WDQ-05-0001, 2010 WL 3609530, at *2 (D. Md. Sept. 14, 2010):

> A party may move to alter or amend a judgment under Rule 59(e), or for relief from a judgment under Rule 60(b). *See* Fed. R. Civ. P. 59(e) & 60(b). A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992).

(footnote omitted). In this case, Negash timely filed his Motion for Reconsideration (ECF No. 23) within twenty-eight (28) days of this Court's Order granting Defendant's Motion for Summary Judgment. (ECF No. 21.) Thus, Plaintiff Negash's Motion will be considered under Rule 59(e).

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a final judgment[8] may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See, e.g.*,

---

[8] Rule 59(e) applies only to final judgments. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)

*Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008); *see also Fleming v. Maryland National Capital Park & Panning Commission*, Civ. No. DKC-11-2769, 2012 WL 12877387, at *1 (D. Md. Mar. 8, 2012). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Kelly v. Simpson*, Civ. No. RDB-16-4067, 2017 WL 4065820, at *1 (D. Md. Jan. 26, 2017). Moreover, "[t]he district court has considerable discretion in deciding whether to modify or amend a judgment." *Fleming*, 2012 WL 12877387, at *1.

## ANALYSIS

Plaintiff Negash alleges that this Court's Order granting Defendant's Motion for Summary Judgment was improper because: (1) summary judgment was granted without affording Negash an opportunity for discovery; and (2) the correlation between the electronic alert system's transaction patterns and EBT trafficking was accepted "despite no evidence being presented to establish a connection." (ECF No. 23.) Negash claims he was "entitled" to discovery before this Court made its ruling because "material issues of fact [still] remain[ed] for evidentiary presentation" and discovery was necessary in order to "fully review the allegations brought against [him]" and to "gather evidence to rebut the allegations." (*Id.* at 4, 6.) Negash also contends that he has "repeatedly disputed that the ALERT system's transaction patterns have any relevant relation to trafficking" and criticizes this Court for "accept[ing] this correlation despite no evidence being presented to establish such a connection . . .." (*Id.* at 8.) In addition, Negash now proceeds to add a new claim that

the Store's permanent disqualification from SNAP violated his "right to Substantive Due Process under the Fifth Amendment." (*Id.* at 9.)

### A. Relitigating Previous Arguments Under Rule 59(e)

As explained previously, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403; *see also Kelly*, 2017 WL 4065820, at *1. Here, Plaintiff Negash's demands for discovery and his contentions questioning the relationship between the electronic alert system data and EBT trafficking were previously raised and considered by this Court in Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment. (ECF No. 17.) After Negash's arguments were assessed, this Court found "that the Store engaged in trafficking is supported by the administrative record and [Plaintiffs] ha[ve] failed to offer any credible argument to the contrary." *Negash*, 2018 WL 722481, at *3, 4. In addition, this Court also found Negash's "attacks on the FNS's use of its electronic alert system [to be] wholly unpersuasive." *Id.* at *4. Therefore, Negash's request for relief under Rule 59(e) is improper because it "merely reiterates arguments [the] Court previously rejected in its Memorandum Opinion[.]" *Redner's Markets, Inc. v. Joppatown G.P. Ltd. P'ship*, Civ. No. RDB-11-1864, 2013 WL 5274356, at *8 (D. Md. Sept. 17, 2013).

### B. Presentation of New Argument

Negash also attempts to raise a new claim that the Store's permanent disqualification from SNAP violated his rights to due process. (ECF No. 23 at 9-10.) However, unlike previous complaints seeking *de novo* judicial review of FNS's permanent disqualification of a SNAP retailer, Negash's one-count Complaint did not allege that the Store's permanent

6

disqualification from SNAP violated Negash's substantive due process rights. (ECF No. 1.) *See, e.g.*, *Hanif v. United States*, Civ. No. H-15-2718, 2017 WL 447465, at *7 (S.D. Tex. Feb. 2, 2017); *Alhalemi, Inc. v. United States*, 224 F. Supp. 3d 587, 589 (E.D. Mich. 2016); *Duchimaza v. United States*, 211 F. Supp. 3d 421, 440 (D. Conn. 2016). Although Negash referenced due process in his Response in Opposition to Defendant's Motion for Summary Judgment, he did not apply the factors implicated in a substantive due process claim nor did he reference any case law. (ECF No. 17 at 5, 6, 23, 24.) Because this due process claim could have been raised previously, Negash is barred from now bringing it under Rule 59(e). *See, e.g.*, *Pac. Ins. Co.*, 148 F.3d at 404 ("Rule 59(e) may not be used to raise new arguments . . . that could have been raised prior to judgment"); *Kelly*, 2017 WL 4065820, at *1 (D. Md. Jan. 26, 2017) ("[T]he Fourth Circuit has cautioned that a party may not use a Rule 59(e) motion to raise arguments which could have been raised prior to the issuance of the judgment. . ..") (internal quotation marks omitted).

### C. No Clear Error of Law or Manifest Injustice

Further, relief is not necessary to "correct a clear error of law or prevent manifest injustice."[9] *See, e.g.*, *Gagliano*, 547 F.3d at 241 n.8; *see also Fleming*, 2012 WL 12877387, at *1. This Court has emphasized that "[c]lear error or manifest injustice occurs where a court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . ." *Wagner v. Warden*, Civ. No. ELH-14-791, 2016 WL 1169937, at *3 (D.

---

[9] Plaintiff Negash fails to explain on which of the limited grounds for reconsideration his Motion is based. (ECF No. 23.) Because Negash does not assert an intervening change in controlling law or present newly discovered evidence, presumably he contends that this Court must "correct clear error of law or prevent manifest injustice." *See, e.g.*, *Gagliano*, 547 F.3d at 241 n.8; *see also Fleming*, 2012 WL 12877387, at *1.

7

Md. Mar. 24, 2016) (internal quotation marks omitted). "When a party argues that Rule 59(e) relief is necessary to correct a clear error of law or to prevent manifest injustice, mere disagreement with the Court's previous decision will not suffice." *June v. Thomasson*, Civ. No. GLR-14-2450, 2016 WL 7374432, at *3 (D. Md. Dec. 20, 2016). Instead, to justify altering or amending a judgment on this basis, "the prior judgment cannot be 'just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Id.* (quoting *Fontell v. Hassett*, 891 F. Supp. 2d 739, 741 (D. Md. 2012)); *see also Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 65 F.3d 166 (4th Cir. 1995). In other words, the Court's previous judgment must be "dead wrong." *See TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009). "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted); *see also Jarvis v. Berryhill*, Civ. No. TMD-15-2226, 2017 WL 467736, at *2 (D. Md. Feb. 3, 2017).

Negash is not "entitled" to discovery in this case. In fact, Negash had the opportunity to provide evidence rebutting the FNS's determination. *See Negash*, 2018 WL 722481, at *4 ("[This] [C]ourt finds Negash's explanations for the suspicious transactions—largely the same explanations offered at the administrative review stage—unpersuasive."). In Negash's Motion, he cites *H.T. Saunders vs. United States,* 507 F.2d 33 (6th Cir. 1974), as "one of the more well outlined SNAP review cases," which "outline[s] what task rests before the District [C]ourt." (ECF No. 23 at 2-3.) In that case, the Sixth Circuit concluded that:

> Since the procedures followed at the administrative level do not provide for discovery or testing the evidence of the Department of Agriculture by cross-examination, it is particularly important that an aggrieved person who seeks

judicial review in a trial de novo not be deprived of these traditional tools **unless it is clear that no issue of fact exists**.

*H.T. Saunders*, 507 F.2d 33 at 36 (emphasis added). Here, this Court concluded that *no issue of fact* existed when the determination of FNS "that the Store engaged in trafficking [was] supported by the administrative record and [Plaintiffs] had failed to offer any credible argument to the contrary." *See Negash*, 2018 WL 722481, at *3. Additionally, the types of discovery Negash seeks would not create a genuine issue of material fact. Negash contends that he is entitled to discover the identities of households whose EBT data was contained in the administrative record in addition to the identities of the comparison stores. (ECF No. 23 at 3, 5, 6, 7, 9.) However, Negash fails to articulate how these identities will create any dispute of material fact as to each of the hundreds of suspicious transfers that FNS identified.[10] This Court has continually granted pre-discovery judgment in favor of the United States in numerous SNAP cases and therefore, Plaintiff Negash's demand for discovery fails. *See 7-Eleven, Inc. v. United States*, Civ. No. GLR-15-0543, 2016 WL 5107129, at *3-4 (D. Md. Jan. 29, 2016); *Mahmood v. United States*, Civ. No. WMN-12-0228, 2012 WL 3038638, at *1 n.4; *AJS Petroleum, Inc. v. United States*, Civ. No. L-11-1085, 2012 WL 683538, at *5 (D. Md. Mar. 1, 2012); *Bernal Deli Grocery v. United States*, Civ. No. MJG-10-1761 (D. Md. Aug. 26, 2011).

---

[10] Additionally, Negash's reliance on *Randallstown International Market, LLC v. United States*, Civil No. GLR-16-4050 (D. Md. Dec. 20, 2016) – currently pending in this Court – is misguided. Negash relies on *Randallstown* as a case in which this Court "permitted discovery," contending that if this Court "had ruled [in *Randallstown*] the way that this Court has [in this case], the plaintiffs in that matter would never have had an opportunity to discover . . . bias and problems with the Defendant's judgment." (ECF No. 23 at 8.) However, in *Randallstown*, this Court did not "permit" or "rule" that the plaintiffs in that case were entitled to discovery, but rather plaintiffs conducted discovery after the United States filed an answer to the complaint. *See Randallstown,* Civil No. GLR-16-04050.

This Court also finds Plaintiff Negash's argument criticizing the correlation between the electronic alert system's transaction patterns and EBT trafficking unavailing. Pursuant to 7 U.S.C. § 2021(a)(2), federal regulations may provide criteria for the "disqualification of . . . a retail food store . . . on the basis of evidence that may include facts established through . . . inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system." *See* 7 C.F.R. § 276.8(a). Further, the Fourth Circuit has also allowed the Government to rely on EBT transaction reports as circumstantial evidence "[t]o prove that trafficking has taken place." *ANS Food Market v. United States*, Civil No. JKB-14-2071, 2015 WL 1880155, at *2 (D. Md. Apr. 22, 2015); *see also Idias v. United States*, 359 F.3d 695 (4th Cir. 2004). Additionally, while the electronic alert system triggered the investigation, an "on-site investigation" and "inconsistent redemption data" were considered before the FNS determined that "trafficking" occurred. *Negash*, 2018 WL 722481, at *4. Although Negash admits that an "on-site inventory"[11] was conducted, he emphasizes that no violations were observed. (ECF No. 23 at 5.) However, as this Court previously stated, the "decision to hold a SNAP retailer liable for trafficking can be made even where the retailer is **not caught red-handed exchanging SNAP benefits** for cash or consideration other than eligible food." *Negash*, 2018 WL 722481, at *3 (citing *AJS Petroleum,* 2012 WL 683538, at *5) (emphasis added). In this case, given the fully developed administrative record, together with Negash's inability to present a genuine dispute of material fact, Defendant was entitled to summary judgment in its favor. *See AJS Petroleum,* 2012 WL 683538, at *5 ("Because

---

[11] Plaintiff Negash contends "there was no on-site investigation," but then admits "there was an on-site inventory that was conducted . . .." (ECF No. 23 at 5.) However, it has been established on the record that a contractor for FNS conducted a store visit in June 2016, to which the Plaintiffs consented. *See* Administrative Record, ECF No. 9-2 at 30-31.)

additional discovery would not change the factual landscape in this case, an analysis under the summary judgment standard is appropriate.").

Finally, even if Negash had raised a substantive due-process argument previously, the Fourth Circuit has held that the SNAP-disqualification scheme is constitutional on substantive due-process grounds. *See Traficanti v. United States*, 277 F.3d 170, 174 (4th Cir. 2000) (rejecting plaintiff's procedural and substantive due process claims with regard to its permanent disqualification from the food stamp program); *Bon Supermarket & Deli v. United States*, 87 F. Supp. 2d 593, 604 (E.D. Va. 2000) (finding that "the permanent disqualification is rationally related to the purposes of the food stamp program and, therefore, does not violate plaintiffs' substantive due process rights."). Nor could Negash argue that *pre-discovery* summary judgment violated his substantive due-process rights. This Court has held several times that pre-discovery summary judgment is appropriate where the administrative record supports the conclusion that a SNAP retailer was trafficking in benefits. *See 7-Eleven, Inc.*, 2016 WL 5107129, at *3-4 (D. Md. Jan. 29, 2016); *Mahmood*, 2012 WL 3038638, at *1 n.4; *AJS Petroleum, Inc.*, 2012 WL 683538, at *5; *Bernal Deli Grocery*, Civ. No. MJG-10-1761 (D. Md. Aug. 26, 2011). In sum, Plaintiff Negash has failed to bring forth issues that rise to the level of a "clear error of law" or reflect a "manifest injustice," and his Motion for Reconsideration (ECF No. 23) is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration (ECF No. 23) as to this Court's Memorandum and Order granting summary judgment in Defendant's favor is

DENIED. Plaintiffs' *Ex Parte* Motion for Extension of Time to File Appeal (ECF No. 25) fourteen (14) days after the date of this Court's Order is GRANTED.

A separate order follows.

Dated: July 16, 2018

_____/s/_____
Richard D. Bennett
United States District Judge